COUNTY COMMISSIONERS — MOTOR CARRIERS — DUMPING SALT WATER Neither a motor carrier nor the county commissioners may lawfully dump salt water on county roads. The Attorney General has received your request for an opinion wherein you ask the following question: "Can a motor carrier and/or the County Commissioner dump salt water on a county road?" The Oklahoma Statutes are replete with provisions relating to the prevention of pollution of the waters of the State, and some of those having the most direct bearing on your question are set out hereafter. Title 29 O.S. 7-401 [29-7-401] (1976), read in pertinent part as follows: "A. Except as otherwise provided, no person may deposit, place, throw, or permit to be deposited, placed or thrown, any lime . . . salt water, crude oil or any other deleterious, noxious or toxic substance in any stream, lake or pond of this state or in any place where such substances may run or be washed into such waters. "B. . . "C. Any person, firm or corporation violating the provisions of this section shall be punished by a fine of not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00), and each day or part of day during which such action is continued or repeated shall be a separate offense. Provided, that the party responsible for the control of any salt water, crude oil or other deleterious substances causing a violation of this section and resulting from drilling, production, transmission, storage or other operation of the petroleum industry shall be reported to the Oklahoma Corporation Commission and if corrective action is not taken immediately then criminal proceedings shall be had as herein provided. The Corporation Commission is also given the express power to order whatever corrective action is necessary to abate the pollution and is given the authority to enforce the order by any action against the lease or well. Such action shall be reported by the Wildlife Department to the appropriate agency." (Emphasis added) Title 47 O.S. 177.2 [47-177.2] (1971), relating specifically to motor carriers, reads as follows: "No motor carrier shall engage in the business of transporting any deleterious liquids or other substances harmful to livestock, crops or croplands, including but not limited to salt water and similar substances being transported for disposal or otherwise, for any valuable consideration whatever, or in any quantity over twenty (20) gallons, without a certificate or permit authorizing such operation and a Salt Water Disposal License to be issued by the Commission. The Commission shall maintain a current list of such licenses. The Commission shall charge such salt water disposal licensing fees as will cover the cost of issuing such licenses and shall promulgate the necessary regulations in connection therewith. The provisions of this Act are supplemental and are in addition to the laws applicable to motor carriers." (Emphasis added) Title 47 O.S. 177.3 [47-177.3] (1971), reads as follows: "(a) It shall be unlawful for a motor carrier to dump, disperse or otherwise release substances described in the preceding section upon a public highway or elsewhere except on property or in wells, reservoirs or other receptacles owned, held, leased or otherwise rightfully and legally available to the motor carrier for such use and purpose. "(b) It shall be unlawful for any motor truck or tank vehicle used to transport salt water or other deleterious substances referred to therein to have a release device located or operated in any manner from within the cab of such a motor vehicle. "(c) Any violation of the foregoing subsections (a) or (b) shall constitute a misdemeanor. It shall be the duty of the prosecuting attorney of the county in which a violation of this Act occurs to file and prosecute the aforementioned misdemeanor charge and advise the Commission of such action and the results thereof. Upon finding at a public hearing of violation by a motor carrier, the Commission shall, pursuant to its jurisdiction under the motor carrier laws, revoke, alter, suspend or amend the operating authority and the license of the carrier involved, or take other appropriate action. In addition, the Commission shall impound the motor truck and tank vehicles of the motor carrier involved until a liability insurance policy or bond is furnished in an amount to be set by the Commission sufficient to assure compliance with this Act." In addition to the above references found in the State Wildlife Code and the State Motor Vehicle Code, specific reference to the salt water pollution problems inherent in the oil and gas industry are found throughout Title 52 of the Oklahoma statutes. Title 52 O.S. 139 [52-139] (1971), pertains to pollution of the waters of the State and reads as follows: "The Corporation Commission of Oklahoma, referred to in this Act as the 'Commission', is hereby vested with jurisdiction, power and authority, and it shall be its duty, to make and enforce such rules, regulations and orders governing and regulating the handling, storage and disposition of salt water, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, refining and processing of oil and gas within the State of Oklahoma or operation of oil or gas wells in this State as are reasonable and necessary for the purpose of preventing the pollution of the surface and subsurface waters in the State, and to otherwise carry out the purpose of this Act." (Emphasis added) 52 O.S. 143 [52-143] makes the violation of 52 O.S. 139 [52-139] a misdemeanor. Title 52 O.S. 296 [52-296] (1971), also deals with the pollution problems inherent in salt water, and the final sentence of this Section states that: "Salt water shall not be allowed to flow over the surface of the land." (Emphasis added) It should be noted that 52 O.S. 303 [52-303] makes the violation of 52 O.S. 296 [52-296] a misdemeanor also, and provides that any penalty paid be split between the road fund of the county in which the action was brought and the informer relating the violation of the law. From the above and foregoing it is clear that the Oklahoma Legislature has given a great deal of attention to the problem of salt water as related to its acknowledged potential for pollution of the land and waters of this State. In this regard, it should be noted that the definition of pollution as found in the Pollution Control Coordinating Act, 82 O.S. 926.1 [82-926.1] et seq. (1976), as well as the definition of waste contained therein, would be broad enough to encompass salt water, and thus its use would likewise be prohibited under the express provisions of 82 O.S. 926.4 [82-926.4], of the Act, which reads in pertinent part as follows: "A. It shall be unlawful for any person to cause pollution as defined in Section 1 of this act of any waters of the State or to place or cause to place any waste in a location where they are likely to cause pollution of any waters of the State. Any such action is hereby declared to be a public nuisance. "B...." (Emphasis added) As regards your specific question, it should be noted that two opinions pertaining to this same general issue have been previously rendered by the Office of the Attorney General. In Opinion No. 67-141, the Attorney General was given the following fact situation: "It has become a practice of several county commissioners in this area to deposit salt and/or salt water upon certain sandy county roads under their jurisdiction. It seems that this procedure results in forming a hard surface on these roads. The counties do not own tank trucks to haul salt or salt water. The salt water is hauled onto the roadbed by motor carriers and in some cases the salt water is dumped on the road as a convenience to the county commissioner, who is building a road, and a convenience to the trucker, who desires to dispose of salt water." The inquiry went on to ask two questions arising under the given circumstances, to-wit: "My first question is whether a county road is a place that can be described as one that is legally available under the above statutes, when the placing of salt water is done under the supervision and/or permission of the county commissioner in the building of a county highway? "My second question is whether or not the county commissioner can lawfully permit or consent to the placing of salt or salt water on a county road, assuming of course, that it is not a place where it will run into a stream or pond as prohibited by the statutes?" The Attorney General in this instance relied upon the provisions of Title 47 set forth above, as codified at that time, and reached the conclusion that the practice described in the letter was a violation of such sections. He, therefore, answered both questions in the negative, and in conclusion stated the following: "We take notice of the fact that any county road is a public highway, and, the foregoing considered with this fact, we therefore conclude that a county road cannot be a place 'legally available' to a motor carrier for the dumping, dispersing, or other releasing of salt or salt water." The opinion further concluded that: ". . . Any permitting or consenting by the county commissioners to the placing of salt or salt water on a county road by a motor carrier would have the effect of aiding and abetting in a violation of the statutes, i.e., in the commission of a crime. And any persons who aid or abet in the commission of a crime are principals to that crime. 21 O.S. 172 [21-172] (1961)." A subsequent Opinion issued on March 21, 1968, again considered this issue and possibly could be construed as overruling to some extent the prior Opinion. We do not find the reasoning of the 1968 Opinion persuasive and hereby reaffirm the conclusions reached in Opinion No. 67-141. To the extent that Opinion No. 68-142 might be interpreted contrary to either Opinion No. 67-141 or to this Opinion, it is hereby overruled. It is, therefore, the opinion of the Attorney General that your question be answered in the negative. Neither a motor carrier nor the county commissioners may lawfully dump salt water on county roads. (JAMES R. BARNETT) (ksg)